THE PEOPLE, *ex rel.* The Board of Health of the City of Rochester, *vs.* THE BOARD OF SUPERVISORS OF THE COUNTY OF MONROE.

A board of health has no interest in the allowance, by the board of supervisors, or in the payment, of claims against the county, belonging to individuals, for expenses incurred under the direction of the board of health. Such board of health, therefore, has no right to apply for a mandamus to compel the board of supervisors to audit and allow such claims.

Boards of health, as constituted by statute, have not the capacity to sue or be sued.

The expenses incurred by the board of health of the city of Rochester, in the execution of the general act for the preservation of the public health, (*Laws of 1850, ch.* 324,) and in carrying into effect their regulations under that act, are properly chargeable upon the county of Monroe, and are to be audited and allowed by the board of supervisors, and collected by general tax, whenever presented in the form, and verified in the manner, prescribed by statute.

Certain claims were presented to the board of supervisors of the county of Monroe, in behalf of, and as belonging to, the city of Rochester, not verified in any way, except by the affidavit of one S., who was styled "auditor of the board of health," which affidavit merely showed that the account presented contained a true statement of the individuals whose accounts were allowed, and that he drew orders for the amount set opposite each name respectively, upon the city treasurer, who paid the same. There was nothing to show what kind or amount of services had been rendered by the persons thus paid, or what their claims consisted of. No items were given, but only the gross amount paid to each. *Held*, that the accounts were not proper, in point of form and statement, and that the board of supervisors had no right or power to allow them, as a charge upon the county, presented in that shape.

*Held also*, that a charge in such accounts, for the purchase of a *hospital*, was not allowable, as a county charge.

The statute does not authorize boards of health to purchase and hold real estate.

THIS was a motion for a mandamus to compel the board of supervisors of the county of Monroe to audit and allow the expenses incurred by the relators, in the year 1853. The motion was ordered to be heard, and was heard, at the general term in June, 1854, upon the affidavits on which the application was made, the return of the respondents and the answers thereto. The claim presented for allowance amounted to between four and five thousand dollars. On the part of the relators it was shown that the claim for the expenses was presented to the board of supervisors, at their annual meeting next after the ex-

penses had been incurred, and that said board refused to audit or allow the same, or to recognize them as proper claims against the county. The return of the respondents contained copies of the claims presented, and alleged that the claims were presented in behalf of, and as belonging to, the city of Rochester, and that they were not verified in any way, except by the affidavit of Henry Scrantom, who was styled "auditor of the board of health." This affidavit was annexed, and merely showed that the accounts presented contained a true statement of the individuals whose accounts were allowed, and that he drew orders for the amounts set opposite each name, respectively, upon the city treasurer, who paid the same. There was nothing to show what kind or amount of services had been rendered by the persons thus paid, or what their claims consisted of. No items were given, but the gross amount paid to each, only. One charge in the account was "For the purchase of West Spring St. hospital, $900." These facts were not denied by the relators. The principal points raised are fully examined in the opinion of the court.

*L. Farrar*, for the relators.

*S. Mathews*, for the respondents.

*By the Court*, JOHNSON, P. J. Whatever may have been the duty of the board of supervisors, in regard to allowing the accounts as presented, as a charge against the county of Monroe, it is quite clear, I think, that this proceeding cannot be maintained by the relators. They have no title to the relief demanded, and no interest whatever in the allowance of the accounts, or any of them, as a charge upon the county. Their compensation is chargeable upon the city, and they have no interest in the allowance or the payment of the claims of others. They are not responsible for those claims, whether they are allowed or rejected. Besides, I am of opinion that boards of health, as constituted by statute, have not the capacity to sue or be sued. It may be, and I am inclined to the opinion that they are, *quasi* corporations invested with corporate powers, *sub modo*, for specified

purposes, like overseers of the poor of a town. But they are not authorized to sue by any statute, and I am unable to perceive that the existence of any such power is necessary to enable them to exercise fully the powers and duties with which they are specially charged. It is a general principle that corporations, being the mere creatures of the law, possess only those properties which the act or charter of creation confers, either expressly or as incidental to their existence. (*Ang. & Ames on Corp.* 1 *to* 7.) The general act gives them power to issue warrants to enforce their orders as a board or tribunal, but gives them no power to maintain any action or other legal proceeding.

This is sufficient to determine this application. But as the respective parties are desirous of having a decision upon the merits, I proceed to the examination of the other questions raised by their counsel upon the argument.

It is contended on behalf of the respondents, that the county of Monroe is not liable for the expenses incurred by the board of health of the city of Rochester, because that board is appointed under the authority conferred by the city charter, and not under the general act.

The general act was passed April 10, 1850, and took effect immediately ; (*Sess. Laws of* 1850, 690, *ch.* 324 ;) and in terms applied to the several boards of health, then organized in cities and villages, and to the several boards to be appointed under the general act. The cities of New-York and Brooklyn are specially excepted from its provisions.

When this act was passed and took effect, the city of Rochester had a board of health which was constituted under the provisions of the act of 1844 to consolidate and amend the act of incorporation. (*Sess. L. of* 1844, 207, *tit.* 2,) and had been continued from that time up to the passage of this act.

On the same day of the passage of the general act, another act was passed, to consolidate and amend the several acts relating to the charter of the city of Rochester, in which the same provisions were contained, in regard to a board of health, which were contained in the act of 1844. This act did not take effect until twenty days after its passage, and expressly provided that all

officers then in office, except assessors and collectors, should continue to exercise their offices until the expiration of the term for which they were elected. The general act, therefore, applied to the board of health in existence in the city of Rochester at the time of its passage. The same board has been continued under the amended charter, and there can be no doubt, I think, that the general act is applicable to it.

The first and second sections of the general act provide for the appointment of boards of health in cities, villages and towns, where such boards did not then exist. The third section relates to the powers of such boards, and confers the same powers upon the several boards already organized, as upon those to be organized under the authority of the act, where they did not then exist. The general act did not attempt to change or interfere with the mode of appointment in places where appointments were provided for and regulated by statute, and had been made. But it did prescribe their powers and duties, and made the expenses incurred by them in executing those powers, and performing those duties, a charge upon the county in which they were respectively situated. It can make no difference under what act, or in what particular form, their appointment is authorized and made. Their general powers and duties are prescribed and regulated by the general act, and the expenses incurred in carrying out these powers, are made a county charge. The fifth section is clear and full upon this subject, and includes all boards, whether their appointment was authorized and regulated by former special acts, or by the general act. But the expenses which are made a county charge, are those incurred in the execution of the powers conferred by the general act, and no others. The city charter, as consolidated and amended in 1844, and again in 1850, authorized the common council to prescribe the powers and duties of the board of health. Whether the common council can, in the exercise of this authority, confer any powers upon the board of health, not conferred by the general act, it is not necessary now to inquire. But if they can, the expenses of carrying out such additional powers would not, most clearly, be a county charge, and the board of supervisors would have no right or

authority to allow them as such.    And I take it, before a claimant can compel a board of supervisors to allow a claim, as a county charge, he is bound in some way to make it appear to such body that his claim is properly chargeable upon the county. I conclude, therefore, that the expenses incurred by the board of health of the city of Rochester, in the execution of the general act, and in carrying into effect their regulations under that act, are properly chargeable upon the county of Monroe, and are to be audited and allowed by the board of supervisors, and collected by general tax, whenever presented in the form, and verified in the manner prescribed by statute.

The next question which arises is, was it the duty of the board of supervisors to audit and allow the accounts as presented, or any portion of them; and should they have been compelled to do so by mandamus, had the proper parties applied?

The only authority possessed by boards of supervisors to make claims, whether presented by individuals or corporations, a county charge, is conferred by statute.    It is made the duty of these boards (1 *R. S.* 367, § 2) to examine, settle and allow all accounts chargeable against their respective counties, and to direct the raising of such sums as may be necessary to defray the same.    But before they are authorized to allow any account and direct the raising of money to defray it, it must be presented properly made out and verified.    The mode of presentment and verification, is prescribed by the twenty-sixth section of the same act.    The account is to be presented in items, and not in gross, and is to be accompanied by an affidavit made by the person presenting or claiming the same, stating that the items are correct, and that the disbursements and services charged therein, have been in fact made or rendered, and that no part thereof has been paid or satisfied.    Unless accounts are so presented and verified, the board are prohibited from allowing them as county charges.

The defendants, in their return, allege that these accounts were presented as claims on behalf of, and as belonging to, the city of Rochester, and that the only affidavit accompanying said accounts, or attached thereto, was the affidavit of Henry Scran-

tom, which is attached to, and made part of said return. And this is not denied or controverted by the answer of the relators. This affidavit does not contain a single requisite prescribed by the statute. Scrantom, as appears by the affidavit, was the auditor of the board of health of said city. He deposes that the papers annexed, which are the accounts, contain a true and exact statement of the individuals whose accounts were allowed; that he drew orders in favor of such individuals for the sums set opposite their respective names, upon the city treasurer, and that such orders were paid by such treasurer. There is not a word to show that the accounts were correct, and for services actually rendered, or disbursements in fact made, by the directions and in pursuance of the authority of the board of health, or any thing having the remotest bearing upon the subject. Clearly the board of supervisors had no right or power to allow these accounts as a charge upon the county, presented in this form. If the auditor of the board of health—an officer unknown to the statute—had seen fit to audit and allow, and the city treasurer to pay these accounts without requiring them to be presented in the form, and to be verified in the manner required, to authorize their allowance by the board of supervisors, they did it in their own wrong. Their ignorance or mistakes could confer no authority upon the supervisors to violate the statute. If the city designed making these claims a county charge, it was the duty of its authorities to see that the accounts, when presented, and allowed and paid from their treasury, were so made out and verified, as to entitle them to be audited by the board of supervisors.

But the accounts were not proper in point of form and statement. The statute requires them to be presented in items. These accounts are all in gross sums—the total amount paid each individual, without any items whatever.

The statute has made it the duty of supervisors, before allowing any account, to see the items, the particular service rendered, or goods furnished, and the price charged therefor, to enable them to judge of the honesty and legality of the transaction, and the justness of the amount of compensation claimed. This is import-

The People *v.* The Supervisors of Monroe.

ant information for them, as guardians of the public interests, to possess; as without it, a just and upright and impartial discharge of their duties would be impossible.

In addition to this, there are charges in the account presented which clearly were not allowable as county charges. One is, "for the purchase of West Spring St. hospital, $900." The statute does not authorize these boards of health to purchase and hold real estate. Among their general powers, the 5th subdivision of section two gives them authority to *procure* suitable places for the reception of persons under quarantine; and persons sick with the Asiatic or malignant cholera, or any other malignant, infectious or contagious disease. This grant of power is satisfied by allowing them to lease for the time being, and as occasion shall require, suitable places of reception for the classes of persons named; or in case they are not able to do that, to erect temporary establishments for that purpose. The object of the statute in conferring this power, obviously was to enable these boards to meet temporary emergencies, and not to incorporate permanent hospitals. Whether this purchase is completed or not does not appear, nor to whom the title is, or is to be conveyed. But it is quite certain that before these boards of health can purchase and permanently hold and own real estate, the legislature must confer additional powers for that purpose.

On the whole, therefore, I am entirely satisfied that the board of supervisors ought not to have allowed these accounts, in the form in which they were presented, and also that these relators cannot maintain this proceeding.

Motion denied.

[MONROE GENERAL TERM, September 5, 1854. *Johnson, Welles* and *T. R. Strong,* Justices.]